UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| |
JOSEPH L. LUTEYN,                              | Case No. 4:06-cv-92
                                               |
    Plaintiff,                            | HONORABLE PAUL L. MALONEY
                                               |
    v.                                    | Magistrate Judge Scoville
                                               |
COMMISSIONER OF SOCIAL SECURITY,               |
                                               |
    Defendant.                            |
                                               |

### Opinion and Order

### Overruling the Plaintiff's Objections and Adopting the R&R
### Terminating the Case

This matter was referred to the Honorable Joseph G. Scoville, United States Magistrate Judge, who issued a Report and Recommendation ("R&R") on Monday, August 27, 2007.

Title 28 U.S.C. § 636(b)(1) provides, "Within ten days after being served with a copy [of an R&R], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court." Likewise, Federal Rule of Civil Procedure 72 provides that "[w]ithin 10 days after being served with a copy of the recommended disposition, a party may serve and file specific, written objections to the proposed findings and recommendations." Calculating the ten-day period as prescribed by Federal Rule of Civil Procedure 6(a), the court finds that plaintiff Luteyn's objection to the R&R was timely filed. Luteyn objects to the ALJ's assessment of his credibility, the ALJ's reliance on the testimony of the vocational expert, and the ALJ's determination that he was capable of performing light work. *See* Objections at 1.

The court finds the R&R to be well-reasoned and is unconvinced by the plaintiff's

objections. For the reasons explained by the R&R, substantial evidence supported the ALJ's determination that Luteyn's mental and physical impairments did not render him disabled between his alleged disability onset date of May 12, 2003 and his date last insured ("DLI").

While Luteyn undisputedly suffered from mild compression deformities in his thoracic spine "transition L5", internal fixation[1] of the right iliac crest,[2] borderline intellectual function, adult antisocial personality disorder,[3] and pain disorder,[4] the ALJ reasonably found that his subjective

---

[1]

In internal fixation, fractured bony parts are stabilized by directly affixing them to one another with surgical wires, screws, rods, pins, or plates. STEDMAN'S MEDICAL DICTIONARY 738 (28th ed. 2006).

[2]

The ilium is the broad, flaring portion of the hip bone. It is bordered superiorly by a thicker crest. "The body transmits the weight of the trunk to the femur [the long bone of the thigh], whereas the ala [upper flaring portion of the ilium] and [iliac] crest provide for muscle attachment and protect abdominopelvic viscera [organs]." STEDMAN'S MEDICAL DICTIONARY (28th ed. 2006) at 42 (ala), 709 (femur), 947 (ilium), and 2136 (viscus/viscera).

[3]

According to the American Psychiatric Association,

The essential feature of this disorder is a pattern of irresponsible or antisocial behavior beginning in childhood or early adolescence and continuing into adulthood. For this diagnosis to be given, the person must be at least 18 years of age and have a history of Conduct Disorder before the age of 15.

Lying, stealing, truancy, vandalism, initiating fights, running away from home, and physical cruelty are typical childhood signs. In adulthood the antisocial pattern continues, and may include failure to honor financial obligations, to function as a responsible parent or to plan ahead, and an inability to sustain consistent work behavior. These people fail to conform to social norms and repeatedly perform antisocial acts that are grounds for arrest, such as destroying property, harassing others, stealing, and having an illegal occupation.

People with Antisocial Personality Disorder tend to be irritable and aggressive and to get repeatedly into fights and physical assaults, including spouse- or child-beating. Reckless behavior without regard to personal safety is common, as indicated by frequently driving while intoxicated or getting speeding tickets. Typically, these people are promiscuous (defined as never having sustained a monogamous

complaints were not credible.

Specifically, it is a claimant's "responsibility to show, through objective medical evidence, that [his] subjective complaints are credible." *Rouse v. Comm'r of Soc. Sec.*, 75 F. App'x 476, 478 (6th Cir. 2003) (per curiam) (Nelson, Gibbons, & Sutton, JJ.) (citing 20 C.F.R. § 416.912(a)). Among other things, Luteyn failed to present objective medical evidence to explain the purported "shakiness" in his hands or his self-imposed extensive limitations on walking, lifting, standing and sitting. "Insufficient objective medical evidence makes credibility a particularly relevant issue and this Court will generally defer to the Commissioner's assessment when adequately supported." *Chandler v. Comm'r of Soc. Sec.*, 124 F. App'x 355, 358 (6th Cir. 2005) (Suhrheinrich, Rogers &

---

relationship for more than a year). Finally, they generally have no remorse [about] the effects of their behavior on others; they may even feel justified in having hurt or mistreated others. After age 30, the more flagrantly antisocial behavior may diminish, particularly sexual promiscuity, fighting, and criminality.

*State v. DiFrisco*, 804 A.2d 507, 542 n.1 (N.J. 2002) (quoting DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 342 (3d ed. Rev. 1987) ("DSM III-R")).

"[A]ntisocial personality disorder, a disorder also referred to as psychopathy or sociopathy . . . is characterized by callousness, cynicism, and contempt for the feelings, rights, and suffering of others." *Roper v. Simmons*, 543 U.S. 551, 573 (2005) (Kennedy, J., for the Court) (citing American Psychiatric Ass'n, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 701-06 (4th ed. Text Rev. 2000) ("DSM IV-TR")). *See also Schriro v. Landrigan*, – U.S. –, 127 S.Ct. 1933, 1953 n.11 (2007) (Stevens, J., dissenting o.g., joined by Souter, Ginsburg, & Breyer, JJ.) (adopting expert's affidavit testimony that "individuals with antisocial personality disorder 'typically act irresponsibl[y] across areas of their daily lives with decisions characterized by impulsivity'") (alterations omitted).

4

"Somataform pain disorder . . . is indicated where:  (1) pain is the predominate complaint; (2) the pain causes clinically significant impairment; (3) psychological factors have an important role in triggering the pain; (4) the symptom or deficit is not intentionally produced or feigned; and (5) the pain is not better accounted for by a mood, anxiety, or psychotic disorder." *Wilson v. Barnhart*, 82 F. App'x 204, 210 n.4 (10th Cir. 2004) (citing DSM IV-TR at 485 and 503).

Cook, JJ.) (per curiam) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)).[5]

Moreover, Luteyn's own filings are internally contradictory with regard to the onset date and cause of his back condition and attendant limitations. In connection with the instant application for social security disability benefits, Luteyn claimed an onset date of May 2003 and told a consulting psychologist that he stopped working because of back problems and stress at home and in his relationship, AR 161, but his workers compensation claim alleged that he was injured on the job in September 2002, which exacerbated his back condition, AR 169-80 (Dep. of Dr. Salena Marie Cox, M.D., who examined Luteyn once in June 2005) and AR 184-88 (Dep. of Dr. James Weissinger, M.D., who examined Luteyn once in October 2004). The ALJ was entitled to draw an adverse inference about Luteyn's credibility due to the inconsistency between his claims in this case and the claims he made in his workers compensation case. *Cf. Osborne v. Sullivan*, No. 90-2609, 907 F.2d 1139, 1990 WL 86203, at *1 (4th Cir. June 6, 1990) (ALJ did not err in rejecting treating physician's opinion that claimant was disabled, because that same physician, in claimant's Workers Compensation case, had "suggested that Osborne's condition was treatable and that he would be able to work following physical therapy").

---

[5]

*See, e.g., Hopkins v. Comm'r of Soc. Sec.*, 96 F. App'x 393, 395 (6th Cir. 2004) (Kennedy, Martin, & Rogers, JJ.) (per curiam) ("The ALJ noted that Hopkins' subjective complaints, including pain, were disproportionate with, and not supported by, the objective evidence in the record. The ALJ acknowledged that Hopkins did experience some discomfort. However . . . . Although Hopkins complained of drowsiness, nausea, and blurred vision, these conditions were not documented in the record. [T]he ALJ did not commit reversible error in rejecting Hopkins' testimony.);

*Long v. Comm'r of Soc. Sec.*, 56 F. App'x 213, 214 (6th Cir. 2003) (per curiam) (Keith, Krupansky, & Clay, JJ.) (ALJ did not err in rejecting plaintiff's claim of disabling migraines; although "a diagnosis of migraine headaches was made, and the headaches were noted to occur as often as several times a week," brain scans and EEG exams were normal and there was no other objective medical evidence to substantiate the alleged severity of the headaches).

This latter claim was not supported by the treatment record, which showed that after the alleged on-the-job back-aggravating injury in September 2002, Luteyn did not seek treatment until December 2002; and even then, the notes from that visit do not pertain to any back problem, AR 153. *Cf. Threet v. Barnhart*, 353 F.3d 1185, 1189 (10th Cir. 2003) ("The ALJ found Dr. Ellis's restrictive residual functional capacity assessment . . . to be inconsistent with [Ms. Threet's] record of having received no medical care/treatment for her injury since September 16, 1998.") (alteration in original).

Luteyn next objects that the ALJ improperly disregarded the opinion of Dr. Cox, who he says was a treating physician, that he was disabled, instead crediting

> the opinion of Dr. Wessinger, a one-time examiner hired by the workers compensation carrier, who stated that Plaintiff had a relatively mild back impairment that did not warrant any exertional restrictions. [I]gnoring the opinions of the treating and consultative examiners, the ALJ failed to properly consider all the evidence as required under SSR [Social Security Ruling] 96-6p, SSR 06-8p and *Hurst v. Secretary of HHS*, 753 F.2d 519 (6th Cir. 1985).

Objections at 2.

Luteyn's characterization of Dr. Cox as his treating physician is unsupported by the record and flatly contrary to guidance provided by our circuit. As the Magistrate Judge noted, a recent Sixth Circuit panel held that, as a matter of law, a single examination does not suffice to create a treating relationship. R&R at 6 n.1 (citing *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 506 (6th Cir. 2006) (per curiam) (Siler & Griffin, JJ., and Katz, D.J.)). "A plethora of decisions unanimously hold that a single visit does not constitute a treating relationship." *Kornecky*, 167 F. App'x at 506 (citing *White v. Barnhart*, 415 F.3d 654, 658 (7th Cir. 2005)). "Indeed, depending on the circumstances and nature of the alleged condition, two or three visits often will not suffice for an ongoing treatment relationship." *Kornecky*, 167 F. App'x at 506 (citing *Cunningham v. Shalala*,

5

880 F. Supp. 537, 551 (N.D. Ill. 1995) (where physician saw claimant five times in two years, it was 'hardly a foregone conclusion' that his opinion should be afforded great weight)); *see also Boucher v. Apfel*, No. 99-1906, 2000 WL 1769520, at *9 (6th Cir. Nov. 15, 2000) (Gilman, J., joined by Merritt & Kennedy, JJ.) (although physician examined claimant three times (once each in 1990, 1992, and 1992), he was not entitled to treating-physician status). As our circuit reasoned in an earlier, published decision,

> The treating physician doctrine is based on the assumption that a medical professional who has dealt with the claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once. * * * Dr. Ruff examined Mr. Baker on only one occasion, and the rationale of the treating physician doctrine simply does not apply here.

*Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See also Bell v. Barnhart*, 148 F. App'x 277, 284-85 (6th Cir. 2005) (Quist, D.J., joined by Boggs, C.J., and Gibbons, J.) (psychologist who examined claimant on a single occasion was not entitled to treating-physician deference); *Hoskins v. Comm'r of Soc. Sec.*, 106 F. App'x 412, 414-15 (6th Cir. 2004) (physician who examined claimant on a single occasion was not a treating physician under 20 C.F.R. § 404.1502) (citing *Atterberry v. Sec'y of HHS*, 871 F.2d 567, 572 (6th Cir. 1989)).

Based on these authorities, the court finds that Cox was merely an examining physician, not a treating physician. Luteyn has not shown why it was reversible error for the ALJ to credit fellow examining physician Weissinger's opinion over Cox's. *Cf. Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) ("In the absence of treating-source status for these doctors, we do not reach the question of whether the ALJ violated *Wilson* [*v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004)] by failing to give reasons for not accepting their reports."). Weissinger, an orthopedic surgeon, examined Luteyn in connection with his workers compensation claim and found him

essentially unrestricted in his ability to work, AR 182-88.

Given the reasonableness of the ALJ's adverse credibility determination, and this court's holding that the ALJ did not violate the treating-physician rule by crediting Weissinger's opinion instead of Cox's, claimant Luteyn fails to show any reversible error in the ALJ's RFC finding.

In turn, the ALJ did not err in formulating a hypothetical question to the vocational expert based on that RFC finding. *See Myatt v. Comm'r of Soc. Sec.*, – F. App'x –, –, 2007 WL 3023485, *3 (6th Cir. Oct. 16, 2007) (Cole, Cook, D.J. Frost) ("[T]he ALJ's hypothetical questions, he insists, failed to include from which Myatt testified he suffers. This argument lacks merit. * * * The ALJ found Myatt to be not fully credible due to inconsistencies between Myatt's testimony, medical history, and information he and his wife submitted to the SSA, and due to Myatt's delay in seeking mental health treatment. Accordingly, substantial evidence supports the ALJ's credibility determination . . . .").

The ALJ was then entitled to rely on the vocational expert's subsequent uncontradicted answer to the hypothetical – namely, that someone with that RFC and background had a significant number of suitable jobs available. *See Lancaster v. Comm'r of Soc. Sec.*, 228 F. App'x 563, 573 (6th Cir. 2007) (Cole, Clay, & Gilman, JJ.) ("'Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question . . . if the question accurately portrays [claimant's] physical and mental impairments.'") (quoting *Varley v. HHS*, 820 F.2d 777, 779 (6th Cir. 1987)) (other internal quotation marks and alterations omitted); *Colvin v. Barnhart*, 475 F.3d 727, 732 (6th Cir. 2007) ("A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental

impairments.") (citing *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001)).[6]

Finally, Luteyn objects that the ALJ erred by refusing to permit lay witness Monica Walls – who was either Luteyn's girlfriend or his fiancee, AR 212 and 224 – to testify regarding her perception of the severity of his mental impairment. As the Magistrate Judge noted, Luteyn's counsel acquiesced in, and did not object to, the ALJ's decision not to call Walls as a witness. R&R at 8-9 (quoting AR 225). In so doing, Luteyn's counsel waived the right to question Ms. Walls.[7] Our Circuit confronted a somewhat similar issue in *Butler v. Comm'r of Soc. Sec.*, 114 F.3d 1186, 1997 WL 259374 (6th Cir. May 15, 1997) (per curiam) (Keith, Merritt, & Cole, JJ.):

---

[6]

*Contrast Davis v. Sec'y of HHS*, 1993 WL 742658, *15 (W.D. Mich. Sept. 21, 1993) (McKeague, J.) ("[T]he ALJ asked the vocational expert if any low stress sedentary unskilled jobs existed which a person of plaintiff's education and past work experience could perform. The vocational expert listed positions as a cashier, non-typing receptionist and gatekeeper. * * * The medical evidence of plaintiff's mental impairment and his testimony (which the ALJ found generally *consistent with the medical evidence*) does not support the ALJ's finding that plaintiff can perform low stress jobs. Thus, the hypothetical did not accurately portray plaintiff's mental impairments, and the vocational testimony and is not substantial evidence that plaintiff could perform substantial gainful activity . . . .") (emphasis added).

[7]

Moreover, if Luteyn did not raise this issue (the ALJ's refusal to permit his girlfriend to testify) before the SSA Appeals Council, that would be an independent basis for concluding that he failed to preserve the issue for appeal to this court. *See Weikert v. Sullivan*, 977 F.2d 1249, 1254 (8th Cir. 1992) ("Weikert next argues that the ALJ's behavior at the hearing displayed such hostility to Weikert that it deprived Weikert of his right to an impartial hearing. * * * *Since Weikert complains of the ALJ's behavior at the hearing, he clearly had the information he needed in order to object at the Appeals Council stage*. Weikert's failure to raise the argument at the agency level would ordinarily prevent him from raising it in judicial proceedings.") (emphasis added) (citing *Hix v. Dir. of OWCP*, 824 F.2d 526, 527 (6th Cir. 1987)); *Millmine v. Sec'y of HHS*, 69 F.3d 537, 1995 WL 641300, *2 (6th Cir. Oct. 31, 1995) (per curiam) (Krupansky, Norris, & Suhrheinrich) ("Plaintiff next claims to have been denied a fair and impartial hearing . . . . This court need not reach the merits of plaintiff's claim. * * * [P]laintiff failed to object to ALJ Stalker's potential bias at the administrative level despite ample opportunity to do so.").

The court need not decide the issue of possible waiver at the Appeals Council level, because Luteyn already waived the issue by failing to object at the administrative hearing.

8

> Butler argues that he was denied procedural due process because he was denied the opportunity to cross-examine the vocational expert, Asa Brown . . . . The district court disagreed, finding that Butler waived the opportunity to cross-examine Brown because Butler's attorney left during a recess in the hearing and was not present when the hearing resumed.
>
> * * *
>
> We agree with the district court. *Although due process requires that a claimant be given the right to cross-examine individuals who testify [or, in Luteyn's case, to call an individual to testify on a relevant matter], that right is waived if the attorney is silent when the opportunity to cross-examine arises. Coffin v. Sullivan*, 895 F.2d 1206, 1212 (8th Cir. 1990). * * *

*Id.* at *3-4 (emphasis added). *Accord Gammons v. Mass. Dep't of Housing & Cmty. Dev.*, 502 F. Supp.2d 161, 165 (D. Mass. 2007) (where plaintiff complained that she was denied, during administrative hearing, her due process right to cross-examine a non-testifying landlord; "At the hearing, Gammons did not object to the lack of opportunity to conduct a cross-examination or seek a continuance so that the landlord could testify on her behalf. The issue is waived.").

Luteyn cannot deny his counsel's acquiescence by complaining that counsel acquiesced merely because he thought it would be futile to persist in requesting Walls as a witness. *See* Luteyn's Objections at 2. If Luteyn is dissatisfied with his counsel's decision not to press the issue and seek to call Walls as a witness, his disagreement is with counsel's litigation tactics, not with the rulings of the ALJ.[8]

In any event, the testimony of a lay witness "is entitled to perceptible weight only if it is fully supported by the reports of the treating physicians," *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) (Moore, Sutton, & <u>D.J. Adams</u>) (citing *Lashley v. Sec'y of HHS*, 708 F.2d 1048, 1054

---

[8]

*Cf. Meier v. Levinson*, 1992 WL 473974, *2 (S.D.N.Y. Apr. 13, 1992) ("The state court or state officials cannot be faulted for doing something to which plaintiff's own attorney agreed. Thus, plaintiff's quarrel here is with his attorney . . . . If the attorney improperly gave bad advice, this is not a matter before this court."), *aff'd w/o op.*, 993 F.2d 1534, 1993 WL 166975 (2d Cir. Apr. 30, 1993).

(6th Cir. 1983)), and Luteyn fails to identify any *treating*-physician report that would lend full support to the testimony Walls intended to give about the severity of Luteyn's mental impairment and the limitations it imposed. *See Melvin v. Sullivan*, 902 F.2d 33, 1990 WL 51410, at *1 (6th Cir. Apr. 24, 1990) (Guy, Boggs, D.J. Gadola) (per curiam) ("Although the lay witness testimony may be fully supported by the subjective conclusions of the treating physicians as to the plaintiff's credibility, such testimony is not fully supported by the medical reports. Under these circumstances, the Secretary did not err in refusing to address the lay witness testimony.").[9] *Accord Landry v. Heckler*, 782 F.2d 1551, 1554 (11th Cir. 1986) ("At the hearing before the ALJ, Landry wished to introduce the testimony of three lay witnesses, his wife and two of his friends, who were prepared to testify to the extent of Landry's pain. The ALJ refused to hear their testimony. It is clear from

---

[9]

To put it another way, if the ALJ had heard the testimony of Luteyn's girlfriend/fiancee, he would not have been obligated to credit her testimony in the absence of corroborating objective medical evidence. *See, e.g., Colwell v. Chater*, 98 F.3d 1341, 1996 WL 557773, *4 (6th Cir. Sept. 30, 1996) (per curiam) (Martin, Krupansky, Daughtrey) ("[T]he Commissioner must give appropriate weight to lay testimony that is supported by the objective medical evidence. * * * Here, however, the lay testimony, in the form of letters submitted by Colwell's family and friends, is not supported by the objective medical evidence. Accordingly, the [ALJ] did not err in refusing to credit this testimony . . . ."); *Malone v. Comm'r of Soc. Sec.*, 69 F.3d 537, 1995 WL 641280, *2 (6th Cir. Oct. 31, 1995) (per curiam) (Martin, Batchelder, D.J. Edmunds) ("The district court also found that the [ALJ] could have found that the testimony given by Malone's ex-husband and son were [sic] not supported by the objective medical evidence . . . ."). Thus, if it were error not to hear that witness's testimony, it would be harmless error on this record.

*Cf. Craig v. Chater*, 943 F. Supp. 1184, 1190 (W.D. Mo. 1996) ("Plaintiff's wife testified on his behalf regarding the duration, frequency, and intensity of his pain and other subjective complaints. * * * The ALJ specifically addressed the testimony of plaintiff's wife and found it not credible because it was inconsistent with the medical evidence, plaintiff's minimal medical treatment, and the reports of treating and examining physicians.").

*Contrast Falk v. Comm'r of Soc. Sec. Admin.*, 282 F. Supp.2d 1206, 1217 (D. Kan. 2003) (holding that ALJ improperly discredited testimony of claimant's husband about her daily limitations and his perception of her limitations, as his testimony was supported by objective medical evidence).

our discussion above that the testimony of these witnesses would have been irrelevant to the Secretary's final decision. Because Landry's claim fails for want of sufficient medical evidence, his assertion that he should have been allowed to produce lay testimony is mooted.").

Accordingly, having reviewed the parties' briefs, the R&R, plaintiff Luteyn's objections to the R&R and the Commissioner's response thereto, the court hereby **OVERRULES** the plaintiff's objections, **ADOPTS** the R&R [docket #13], and **AFFIRMS** the Commissioner's decision.

This case is **TERMINATED.**

This is a final and appealable order.

**IT IS SO ORDERED this 1st day of November 2007.**

/s/ Paul L. Maloney
_____

Paul L. Maloney
United States District Judge